RONALD W. KNIGHT, APPELLANT, v. H & H
CHEVROLET, A NEBRASKA CORPORATION, APPELLEE.
337 N.W.2d 742

Filed August 12, 1983.  No. 82-405.

Michael W. Pirtle of McCormack, Cooney, Mooney & Hillman, P.C., for appellant.

Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

McCOWN, J.

This is a bailment action brought by the plaintiff bailor to recover for the loss of his automobile while it was in the possession of the defendant bailee for purposes of repair.  The jury returned a verdict in favor of the defendant and the plaintiff has appealed.

On Wednesday, May 28, 1980, the plaintiff, Ronald W. Knight, delivered his 1980 Corvette automobile to the premises of the defendant, H & H Chevrolet, to have some warranty repair work done.  Plaintiff talked to the defendant's service adviser, who had the plaintiff fill out a service order for the repair work and told plaintiff that the repairs should be

completed by Friday, May 30. The plaintiff left his automobile and keys with the service adviser.

On Friday, May 30, the service adviser telephoned the plaintiff and told him that it was necessary to order parts and that the repair work would be delayed. The service adviser also told plaintiff that the car was drivable and that plaintiff could pick up the car while the parts were on order. The plaintiff did not pick up his car and the car was moved into a fenced lot located alongside the defendant's garage.

On Saturday, May 31, the service adviser observed plaintiff's car parked in the fenced lot. He searched the car to make sure that the keys were not in it and that the doors were locked. It was the defendant's practice to keep keys either in the car or in the "tower" inside the garage.

The service adviser knew that a Corvette was a "high risk" automobile susceptible to theft and vandalism, and testified at trial that he intended to move the automobile into the garage for safekeeping over the Memorial Day weekend but became busy with other customers and forgot to move the car.

The open lot in which plaintiff's automobile was placed was surrounded by a Cyclone fence topped with barbed wire and had two gates, each of which was chained and padlocked when the garage was closed. The lot is located at a busy intersection in Omaha, Nebraska.

Plaintiff's automobile was apparently stolen from the defendant's lot on Sunday morning, June 1, 1980. A witness dining at a restaurant located across the street from the lot observed a young man walk up to the Corvette, hesitate at the door, enter the car, and, after a short time, drive the car around the garage and out of sight.

On Monday morning, June 2, the defendant's employees discovered that a chain securing one of the gates to the fenced lot had been cut. A visual inventory by the employees failed to disclose that plaintiff's automobile was missing.

On Wednesday, June 4, 1980, the service adviser was ready to commence repairing the plaintiff's automobile but was unable to find the car. The service adviser assumed that plaintiff had picked up his automobile and telephoned the plaintiff to have him return the car, only to learn that plaintiff had not picked up his car.

A thorough search of the garage premises failed to locate either the car or the keys, and neither the vehicle nor the keys have ever been found. The police were contacted, and on Saturday, June 7, 1980, the service adviser notified the plaintiff that his car had been stolen and could not be found.

Following demand and refusal, this bailment action was commenced. The third amended petition, on which the case was tried, alleged that plaintiff had delivered the Corvette to the defendant, that the defendant had impliedly promised to return the car after completing the repair work, and that the defendant had breached its implied promise by failing to timely redeliver the car. The defendant's answer alleged that the loss of the plaintiff's automobile was proximately caused by the intervening independent acts of an unknown thief and that defendant was not negligent.

The case was tried to a jury. The parties stipulated at trial that plaintiff's automobile had a fair and reasonable value of $12,500, and that the transaction between the plaintiff and the defendant constituted a bailment for hire or mutually reciprocal bailment, and the jury was so instructed.

Over the plaintiff's objections the jury was also instructed: "Before the plaintiff can recover against the defendant in this case, the burden is upon the plaintiff to establish by a preponderance of the evidence each and all of the foregoing [sic] propositions:

"1. That the theft or loss of the plaintiff's Corvette automobile was due to the negligent acts or omissions by the defendant, and that the negligent

acts or omissions by the defendant was [sic] a direct and proximate cause of plaintiff's loss or a proximately contributing cause to [sic] said loss."

The jury brought in a verdict for the defendant and the plaintiff has appealed.

The issue on this appeal is whether or not the instruction placing upon the plaintiff the burden of proving the defendant's negligence was correct. The plaintiff contends that the bailment action here was pleaded in contract and did not allege negligence and that the defendant's pleading that it was not negligent placed the burden upon the defendant of proving the lack of negligence. Plaintiff argues, on several grounds, that in a bailment for hire case the burden of proving negligence on the part of the bailee should not rest upon the bailor but, instead, the burden of proving that it was not negligent should rest on the bailee.

The defendant contends that the traditional rule placing the overall burden on the bailor to prove the bailee's negligence was correct. The conflicting contentions require a reexamination of the rules governing the burden of proof in bailment for hire cases.

In Nebraska the traditional rule was last pronounced in *Nash v. City of North Platte*, 198 Neb. 623, 255 N.W.2d 52 (1977), in which this court held: "In an action for the bailee's failure to exercise required care whereby bailed property becomes lost, destroyed, or injured, the plaintiff has the burden of proving the negligence of the bailee which proximately caused the loss or injury. . . . The loss or injury of bailed property while in the hands of the bailee ordinarily creates a presumption of negligence. Generally, the effect of this rule is not to shift the ultimate burden of proof from bailor to bailee, but merely to shift the burden of proceeding or going forward with the evidence; the ultimate burden of establishing negligence is on the bailor and remains on him throughout the trial."

It will be noted that the holdings in *Nash* are made in the context of a bailment action based on negligence rather than on a contract action, although the bailee's negligence is critical in both.

As early as 1902 this court held that in an implied contract bailment for hire case the burden is on the *bailee* to show that property entrusted to his care was lost without negligence on his part. *Sulpho-Saline Bath Co. v. Allen*, 66 Neb. 295, 92 N.W. 354 (1902).

The seemingly conflicting results may be typical of the situation in many states which have generally followed the traditional rule. Those states allocated the burden of proof on the issue of negligence or lack of it on the basis of the pleadings. In a contract action the burden was upon the bailee to prove that the goods had been lost without fault on its part, and in a tort action for negligence the burden was upon the bailor to prove that the bailee was negligent. The burden of proof was predicated on the art of pleading and sometimes confused the burden of proof with the burden of going forward with the evidence. The application of the rule produced conflicting results.

A great many courts and legal writers have considered the policy issues involved, and a substantial number of states have adopted a rule as to the burden of proof in bailment cases which is applicable, regardless of whether the liability is predicated in tort or on contract. See, *Knowles v. Gilchrist Co.*, 362 Mass. 642, 289 N.E.2d 879 (1972); *Low v. Park Price Company*, 95 Idaho 91, 503 P.2d 291 (1972); *Clack-Nomah Flying Club v. Sterling Aircraft, Inc.*, 17 Utah 2d 245, 408 P.2d 904 (1965); *National Surety Corp. v. Todd County Dairy Co-op.*, 269 Minn. 298, 130 N.W.2d 511 (1964). See, also, Recent Cases, *Bailments—Allocation of the Burden of Proving the Bailee's Negligence*, 43 Mo. L. Rev. 90 (1978); Comment, *Burden of Proof of Bailee's Negligence in Connec-*

*tion with His Failure to Redeliver*, 8 Hastings L. J. 89 (1956).

Courts which have adopted the newer rule have almost universally agreed that where the property is in the sole possession of the bailee, the bailee may well be the only party in a position to explain the circumstances under which the property was lost or damaged; in such circumstances it would be unfair to require the bailor to prove negligence on the part of the bailee. Additional policy reasons for placing the burden of proof on the bailee are set out in *Knowles* and *Low, supra*.

Nebraska U.C.C. § 7-403 (1980), in dealing with warehousemen or carriers bailment obligations, provides in relevant part: "(1) The bailee must deliver the goods to a person entitled under the document who complies with subsections (2) and (3), unless and to the extent that the bailee establishes any of the following:

. . . .

"(b) damage to or delay, loss or destruction of the goods for which the bailee is not liable."

The drafters of the Uniform Commercial Code left it optional with each state adopting the code whether the burden of proving negligence should be upon the bailor or the burden of proving reasonable care upon the bailee. The official text contained additional bracketed language at the end of (1)(b) which would have had the effect of placing the burden of establishing negligence on the bailor. When the Nebraska Legislature enacted the section it omitted the bracketed language and clearly placed the burden of proof on the bailee.

In the absence of some compelling reasons it seems clear that courts should avoid the inconsistency of having one rule for bailees subject to the Uniform Commercial Code and a different rule for other bailees for hire. Logic as well as fairness dictates adoption of the newer rule as to burden of proof in bailment for hire cases.

We therefore hold that in a bailment for hire or a mutually reciprocal bailment case, in the absence of statutory or contractual provisions to the contrary, once bailor proves delivery of property to bailee in good condition and failure to redeliver upon timely demand, the burden is irrevocably fixed upon bailee to prove by a preponderance of the evidence that he has exercised due care to prevent the loss, damage, or destruction of the property.

This principle applies to all bailment for hire cases, whether brought in tort or in contract, in which bailee has exclusive control over the property at the time it was lost, destroyed, or damaged.

With respect to holdings as to the burden of proof in bailment cases, *Nash v. City of North Platte*, 198 Neb. 623, 255 N.W.2d 52 (1977), and its predecessors are overruled.

In the present case the jury was instructed that the burden of proving negligence on the part of the bailee was upon the bailor and that the bailor could not recover without sustaining that burden of proof. In view of the foregoing discussion that instruction was erroneous, and the judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.