ADRIAN R. REGIER, BY LORIE REGIER, GUARDIAN AND CONSERVATOR, APPELLANT, V. GOOD SAMARITAN HOSPITAL, KEARNEY, NEBRASKA, A CORPORATION, ET AL., APPELLEES.

651 N.W.2d 210

Filed September 20, 2002.   No. S-01-631.

Larry C. Johnson, of Johnson, Vaughan & Welch, P.C., for appellant.

Patrick G. Vipond and Shun Lee Fong, of Lamson, Dugan & Murray, L.L.P., for appellee John Finkner, M.D.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Lorie Regier (Regier), the guardian and conservator of Adrian R. Regier (Adrian), appeals from the order of the district court for Buffalo County which sustained the demurrer of John Finkner, M.D., and dismissed Regier's cause of action against Finkner without leave to replead. We reverse.

## STATEMENT OF FACTS

On January 8, 2001, Regier filed a petition against various defendants, including Finkner. This appeal is limited to the dismissal of Regier's cause of action against Finkner, without leave to replead. We summarize the facts alleged by Regier in her petition. Adrian was born on July 6, 1980, and lives in Perkins County, Nebraska. Regier is Adrian's mother. On September 26, 1997, Adrian sustained a concussion while playing high school football. He was taken from the field to the Community Hospital in McCook, Nebraska, where he was admitted to the emergency room at approximately 9:45 p.m. and treated by Corrine Phillips-Ward, M.D., and Elizabeth Edwards, M.D. At approximately 11:45 p.m., Phillips-Ward contacted the Good Samaritan Hospital (Good Samaritan) in Kearney, Nebraska, and spoke with Finkner. Good Samaritan is a " 'regional referral center' "

and has "specialized capabilities," including helicopter ambulance service, a shock-trauma unit, and neurosurgery expertise. Although paragraph 10 of the petition alleges that Finkner is an employee of the "Community Hospital," given the remaining allegations in the petition and the parties' briefs, we understand this statement to be an allegation that Finkner is an employee of Good Samaritan. It is alleged that notwithstanding the fact that Good Samaritan had the specialized capabilities or facilities needed by Adrian and the " 'capacity' " to treat Adrian, upon receiving the call from Phillips-Ward, Finkner refused to accept Adrian's transfer from the Community Hospital to Good Samaritan. There is no suggestion in the petition that in this telephone call, Finkner said anything of medical substance. Adrian was not taken to Good Samaritan.

Sometime after 3:45 a.m. on September 27, 1997, Adrian was transferred to Lincoln General Hospital in Lincoln, Nebraska. Upon arrival, his intracranial pressure was measured at 60. A CAT scan of his head revealed severe cerebral edema due to his head injury. Despite efforts by the medical staff at Lincoln General Hospital to relieve Adrian's intracranial pressure by controlled ventilation and intermittent mannitol, Adrian did not make significant neurological improvement and sustained severe traumatic brain injury.

With respect to Finkner, the petition alleges, inter alia, that Finkner's refusal to accept the transfer of Adrian was in violation of Good Samaritan's hospital standards, bylaws, rules, and regulations regarding the acceptance of transfer patients and that it also violated the general industry standard regarding the acceptance of transfer patients. The petition does not recite or suggest the substance of the standards, bylaws, rules, and regulations or that Finkner had agreed to adhere to them.

On February 12, 2001, Finkner filed a demurrer claiming, inter alia, that the petition failed to state a cause of action against him. On March 19, the district court held a hearing on Finkner's demurrer. In an order dated May 7, the district court sustained Finkner's demurrer. The district court stated that Finkner had not been an attending physician for Adrian and that "no physician-patient relationship ha[d] been or could be alleged." The district court concluded that Finkner had no liability to Adrian, because Adrian

had never been received by or entered into Good Samaritan for treatment. Based upon these determinations, the district court dismissed Regier's cause of action against Finkner, stating:

> The Court finds that [Regier] has failed to state a cause of action against defendant Finkner. It also appears to this Court that it will not be possible for [Regier], given the facts presented in the petition, to set forth sufficient facts upon which a cause of action against . . . Finkner can be alleged. The Court therefore dismisses this cause of action.

The district court entered its order dismissing Regier's cause of action against Finkner without leave to amend. Regier appeals.

## ASSIGNMENTS OF ERROR

On appeal, Regier assigns two errors. Regier claims, restated, that the district court erred (1) in sustaining Finkner's demurrer and (2) in dismissing Regier's cause of action against Finkner without leave to amend.

## STANDARDS OF REVIEW

In an appellate court's review of a ruling on a demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *McCormick v. City of Norfolk*, 263 Neb. 693, 641 N.W.2d 638 (2002); *McCarson v. McCarson*, 263 Neb. 534, 641 N.W.2d 62 (2002). In reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept the conclusions of the pleader. *Shirley v. Neth, ante* p. 138, 646 N.W.2d 587 (2002); *Spradlin v. Dairyland Ins. Co.*, 263 Neb. 688, 641 N.W.2d 634 (2002); *Mulinix v. Roberts*, 261 Neb. 800, 626 N.W.2d 220 (2001). Whether a petition states a cause of action is a question of law regarding which an appellate court has an obligation to reach a conclusion independent of the inferior court. *Shirley, supra.*

## ANALYSIS

At issue in this case is whether Regier's petition states a cause of action against Finkner and, if not, whether the district

court should have granted leave to Regier to replead. In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002). A statement of facts sufficient to constitute a cause of action means a narrative of events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Spradlin, supra.*

In determining whether a cause of action has been stated, the petition is to be construed liberally, and if, as so construed, the petition states a cause of action, a demurrer based on the failure to state a cause of action must be overruled. *Chambers, supra*; *Spradlin, supra.* When a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that amendment will correct the defect. *Northwall v. State*, 263 Neb. 1, 637 N.W.2d 890 (2002).

The relevant portions of the petition regarding Finkner are paragraphs 10 and 36. Paragraph 10 reads as follows: "At all times pertinent hereto, Defendant FINKNER was an employee and/or agent of the Defendant COMMUNITY HOSPITAL [sic] acting within the scope and course of such employment and/or agency in the rendition of his medical services." Paragraph 36 alleges the following:

> Defendant FINKNER was negligent in his medical care and treatment of Adrian in one or more of the following particulars:
>
> a) in failing to accept the transfer of Adrian to the Defendant GOOD SAMARITAN given Adrian's medical condition and the capacity and the specialized capabilities of Defendant GOOD SAMARITAN to treat that condition in violation of the applicable standard of care in the provisions of 42 U.S.C.§1395dd [(1994), Emergency Medical Treatment and Active Labor Act];
>
> b) in failing to accept the transfer of Adrian to the Defendant GOOD SAMARITAN given Adrian's medical

condition and the Defendant hospital's specialized capabilities and capacity to treat that condition in violation of hospital standards, bylaws, rules and regulations for the acceptance of transfer and care of patient's [sic] in Adrian's condition;

c) in failing to accept the transfer of Adrian to the Defendant GOOD SAMARITAN given Adrian's medical condition and said Hospital's specialized capabilities and capacity to treat that condition in violation of industry standards for the acceptance of transfer and care of patients in Adrian's condition.

In her brief before this court, Regier asserts that "the facts alleged in the Petition support both a general negligence claim and a medical malpractice claim against . . . Finkner." Brief for appellant at 12. Regier acknowledges that Finkner did not "treat" Adrian; however, Regier asserts that "Finkner, as the emergency room physician, [was] contractually obligated to provide emergency room services . . . and owed a duty to Adrian." Brief for appellant at 13.

This court has previously recognized that generally, a physician's duty to exercise the required skill or standard of care must arise out of the physician-patient relationship and that the relationship can be said to arise when the physician undertakes treatment of the patient. *Flynn v. Bausch*, 238 Neb. 61, 469 N.W.2d 125 (1991). See, also, *Gallion v. Woytassek*, 244 Neb. 15, 504 N.W.2d 76 (1993). We have also previously stated that the "existence of a physician-patient relationship is normally a question of fact" and "the party claiming the existence of the relationship must allege some facts to show that the relationship came into existence." *Id.* at 20, 504 N.W.2d at 80. In *Flynn*, we acknowledged that "[s]ome courts . . . have held that a physician-patient relationship is not a necessary prerequisite for sustaining an action in medical malpractice, and have grounded liability upon the traditional duty analysis for negligence." *Id.* at 65, 469 N.W.2d at 128. We noted, however, that under the facts of the *Flynn* case, nothing was called to our attention to support the imposition of such a duty, and, therefore, it was not necessary to determine in *Flynn* the general question of whether liability can exist absent an underlying physician-patient relationship.

In the instant case, Regier alleges in her petition that Finkner was "negligent in his medical care and treatment of Adrian." The petition contains no allegations, however, that Finkner undertook to provide any medical care or treatment to Adrian. See *id.* To the contrary, the petition alleges that Finkner refused to accept the transfer and thus alleges facts that no physician-patient relationship based on treatment came into existence. Finally, although in her brief Regier claims that the allegations in the petition support a general negligence claim against Finkner, the petition fails to allege facts establishing that under existing Nebraska jurisprudence, Finkner owed a duty to Adrian. See *id.*

We acknowledge that there are allegations that Finkner's refusal to accept Adrian's transfer was in violation of Good Samaritan's bylaws, rules, and regulations, although the substance of such bylaws, rules, and regulations are not alleged. The petition alleges that Finkner is an employee and agent of Good Samaritan; however, it does not allege that he was subject to a contract which obligated him to follow the bylaws, rules, and regulations which might have benefited Adrian. The allegations against Finkner do not state what, if any, undertakings Finkner assumed.

As noted, the petition fails to allege facts setting forth a physician-patient relationship between Finkner and Adrian. Furthermore, the petition sets forth no facts establishing a duty Finkner owed to Adrian. Accordingly, the petition does not adequately plead a cause of action under Nebraska law against Finkner, and the district court correctly so ruled.

When a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that amendment will correct the defect. *Northwall v. State,* 263 Neb. 1, 637 N.W.2d 890 (2002). While the current allegations in the petition fail to state a cause of action against Finkner, it is possible that Regier might be able to amend the petition by alleging facts imposing a duty on the part of Finkner in favor of Adrian. Accordingly, the district court erred in denying Regier leave to replead.

## CONCLUSION

The petition does not adequately plead a cause of action against Finkner. However, a reasonable possibility exists that

amendment will correct the defect. Although the district court correctly sustained Finkner's demurrer to the petition, it erred when it denied leave to replead. We, therefore, reverse the district court's order.

REVERSED.

WRIGHT, J., not participating.